15 CV 3975

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                    :

NATIONAL INDEMNITY COMPANY,   :    Case No. _____

                     Petitioner,   :

                             :    Hon. Naomi R. Buchwald

   - against -                :

                             :

IRB BRASIL RESSEGUROS S.A.,      :

                    Respondent.   :

                                      :
-------------------------------------------------------------x



<br>

## MEMORANDUM OF LAW IN SUPPORT OF PETITION
## TO CONFIRM THE ARBITRATION AWARD

<br><br>

                       CLYDE & CO US LLP
                       Michael A. Knoerzer
                       Stephen M. Kennedy
                       Gregory S. Hoffnagle
                       405 Lexington Avenue, 16th Floor
                       New York, NY  10174
                       Telephone: (212) 710-3900
                       Fax: (212) 710-3950

<br>

                       *Attorneys for Defendant*
                       *National Indemnity Company*

# TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF RELEVANT FACTS .......................................................................2

A.   The Parties ...................................................................................................2

B.   The Underlying Contracts............................................................................3

C.   The Arbitration, Final Awards, and DLA Piper's & Mr. White's Misconduct ......................3

ARGUMENT ...............................................................................................................12

POINT I.    CONFIRMATION OF THE MAY 15 FINAL AWARD IS GOVERNED
            BY THE FEDERAL ARBITRATION ACT AND CONVENTION ON
            THE RECOGNITION AND ENFORCEMENT OF FOREIGN
            ARBITRAL AWARDS ................................................................12

POINT II.   THE MAY 15 FINAL AWARD IS ENTITLED TO GREAT
            DEFERENCE AND SHOULD BE CONFIRMED BECAUSE THERE
            ARE NO GROUNDS FOR VACATUR UNDER THE FAA OR THE
            CONVENTION ...........................................................................13

CONCLUSION.............................................................................................................15

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agility Pub. Warehousing Co. K.S.C. v. Supreme Foodservice GmbH,*
    495 Fed. Appx. 149 (2d Cir. 2012)............................................................................13

*Dalbec v. Alusuisse Flexible Packaging, Inc.,*
    No. 94 CV 288 (NG), 1997 WL 57242 (E.D.N.Y. Feb. 10, 1997)..........................14

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust,*
    729 F.3d 99 (2d Cir. 2013).......................................................................................13

*Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.,*
    157 F.3d 174 (2d Cir. 1998).....................................................................................14

*Scandinavian Reins. Co. Ltd. v. Saint Paul Fire and Marine Ins. Co.,*
    668 F.3d 60 (2d Cir. 2012)..............................................................................12, 13

*Victory Transp. Inc. v. Comisaria Gen. de Abastecimientos y Transportes,*
    336 F.2d 354 (2d Cir. 1964).....................................................................................13

*WWOR-TV, Inc. v. Local 209, NABET CWA, AFL CIO,*
    166 F.3d 1203 (2d Cir. 1998)...................................................................................14

*Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.,*
    126 F.3d 15 (2d Cir. 1997)..............................................................................12, 14

**Statutes**

9 U.S.C. § 10.................................................................................................................15

9 U.S.C § 11..................................................................................................................15

9 U.S.C. § 203...............................................................................................................12

9 U.S.C. § 207.........................................................................................................13, 14

N.Y. Ins. Law § 1213 (McKinney 2005) .......................................................................2

## PRELIMINARY STATEMENT

Petitioner, National Indemnity Company ("NICO"), respectfully submits this memorandum of law in support of its Petition to Confirm the Arbitration Award, which seeks an order confirming the Final Award issued on May 15, 2015 ("May 15 Final Award") by a Majority of the Panel in an arbitration ("Panel") brought by NICO against IRB Brasil Resseguros S.A. ("IRB").[1]  The awards authored by a Majority of the Panel are proper and must be confirmed under the standards enumerated by the Federal Arbitration Act ("FAA").

This result is not altered by the unethical and outrageous misconduct of IRB's former counsel, DLA Piper US LLP ("DLA Piper"), and its party-appointed arbitrator, James White, which has marred this proceeding.  In blatant violation of the prohibition on ex parte communications between counsel and the Panel, DLA Piper and Mr. White conspired to have DLA Piper attorneys write a dissent (the "Dissent") which Mr. White published in his own name. Even after the provenance of the Dissent was called into question by the other arbitrators, DLA Piper hastily filed the Dissent in this Court as the lynchpin of its motion to vacate essentially all substantive decisions of the arbitration Panel, and falsely represented it to be a true and accurate copy of a document authored by Mr. White.  At first, in the face of questions from the other arbitrators about the provenance of the Dissent, Mr. White refused to confirm that he was the author.  Caught in the act, DLA Piper then confessed that it breached the prohibition against ex parte communications with arbitrators, secretly engaged in prohibited conversations with Mr. White, prepared a draft Dissent in his name, and then filed it in this Court, all without revealing

---

[1] NICO has previously submitted to this Court two petitions to confirm two other arbitration awards issued by the same Panel.  Those petitions are currently *sub judice*.  NICO's previous petitions to confirm were made under seal because of a Confidentiality Order issued by the Panel.  The Panel has now lifted the Confidentiality Order and therefore there is no basis or reason for filing this petition to confirm under seal in this Court.  *See* Declaration of Michael A. Knoerzer in Support of Petition to Confirm at Ex. A. (hereinafter referred to as "Knoerzer Dec.").

that DLA Piper was actually the author of the Dissent. DLA Piper, faced with serious ethical and disciplinary issues, sought to withdraw the Dissent from the record before this Court, and has since withdrawn itself from its representation of IRB.

NICO requests that all three awards before the Court be confirmed forthwith. The May 15 Final Award that is the subject of this petition orders IRB to pay NICO's fees and costs of $2,524,486.40 (plus interest accruing after June 10, 2015 at 9% per annum), plus amounts expended by NICO for which IRB has been ordered to indemnify NICO. IRB, as an unauthorized and alien insurer, is required to post a bond/security with the court in the event IRB and its new counsel intend to oppose NICO's petition to confirm. *See* N.Y. Ins. Law § 1213 (McKinney 2005).

**STATEMENT OF RELEVANT FACTS**[2]

**A.      The Parties**

Petitioner NICO is a Nebraska insurance company writing direct insurance policies and reinsurance contracts covering risks in the United States and internationally.[3]  Respondent IRB is

---

[2]  Although the Arbitration is no longer confidential as per the Majority of the Panel's May 15 Final Award, certain documents were filed under seal pursuant to the previously existing Confidentiality Order. On May 15, 2015, NICO filed a motion to unseal the record which is currently *sub judice.* Until such time as the Court decides that motion, NICO will strictly observe the sealing order currently in place.

[3]  Reinsurance is an arrangement whereby an insurer (the reinsured or the ceding company) cedes or transfers all or part of the risk on an underlying insurance policy or group of policies to a reinsurer, which agrees to indemnify the ceding company for the risk transferred in exchange for receiving premium. Reinsurers may, in turn, cede all or part of the risk they have agreed to reinsure to other reinsurers. This type of arrangement is known as retrocessional coverage and the reinsurer ceding the risk and the reinsurer accepting the risk are referred to as, respectively, the retrocedent and the retrocessionaire.

a Brazilian reinsurer that reinsures direct insurance policies written by insurance companies based in Brazil.

**B.      The Underlying Contracts**

For the period of January 21, 2007 to November 21, 2007, Companhia Siderurgica Nacional ("CSN"), a steel, iron ore and mining conglomerate located in Brazil, purchased a direct insurance policy from Sul America Cia Nacional de Seguros ("Sul America"), a Brazilian insurance company (the "2007 CSN Policy"). The 2007 CSN Policy was later extended from November 21, 2007 to February 21, 2008 (the "Extension Period"). Sul America reinsured almost the entire coverage provided under the 2007 CSN Policy with IRB. IRB, in turn, ceded a substantial portion of its reinsurance of the 2007 CSN Policy for the Extension Period to NICO under a retrocessional agreement (the "2007 Retrocessional Contract"). The 2007 Retrocessional Contract consists of both a Certificate of Facultative Reinsurance (the "Certificate") and a Facultative Reinsurance Slip ("Slip"), which contain substantially the same terms and conditions.

For the period of February 21, 2008 to February 21, 2009, CSN purchased a direct insurance policy from Mapfre Seguros, a Brazilian insurance company (the "2008 CSN Policy"). IRB reinsured the 2008 CSN Policy and ceded a substantial portion of its reinsurance of the 2008 CSN Policy to NICO under a retrocessional agreement (the "2008 Retrocessional Contract").

The 2007 and 2008 Retrocessional Contracts contain arbitration clauses (the "Arbitration Agreements").

**C.      The Arbitration, Final Awards, and DLA Piper's & Mr. White's Misconduct**

In late 2008, NICO demanded arbitration against IRB under the 2007 and 2008 Retrocessional Contracts concerning, among other things, IRB's right to coverage under those contracts for property losses relating to a conveyor belt system owned and operated by CSN in

-3-

Brazil (the "CSN Conveyor Belt Losses").  The parties proceeded with a consolidated arbitration under the 2007 and 2008 Retrocessional Contracts.

The Arbitration was subject to a confidentiality order issued on April 26, 2012 by the Panel (the "Confidentiality Order").  As discussed below, this Confidentiality Order was subsequently modified twice by the Panel, in both instances at the request of NICO based upon the conduct of IRB and/or its counsel.  It was first modified on April 15, 2015 and thereafter by the Panel's May 15 Final Award, which withdrew the Confidentiality Order in its entirety, permitting NICO to submit all documents relating to the arbitration in any court, arbitral and other proceeding.  *See* Knoerzer Dec., Ex. A.   Thus, the **arbitration documents are not confidential**.  *Id.*

Both parties pursued extensive document and deposition discovery, and after a series of contested discovery and other issues, the arbitration proceeding ultimately culminated in an arbitration hearing at DLA Piper's offices in New York, New York from November 3, 2014 to November 12, 2014.  Both Parties submitted documentary evidence, witness testimony, and argument to the Panel concerning the issues in dispute.  On January 15, 2015, after due deliberation, a Majority of the Panel issued a "Final Decision" (the "January 15 Final Award"). The Panel retained jurisdiction to determine other issues and issued its final decision with respect to those issues (the "April 15 Final Award").

On April 16, 2015, despite having remained silent since the January 15 Final Award was issued, IRB's arbitrator, Mr. White, published a document labeled "Dissent," which he had putatively authored.  *See* Knoerzer Dec., Ex. B.  In the Dissent, Mr. White asserted for the first time that the Umpire of the arbitration Panel was biased in favor of NICO and that "the

-4-

legitimacy of the arbitral process require[d] **careful** scrutiny by the court." *Id.* at p. 1. (emphasis

in original).

A day later, on April 17, 2015 at 10:04 a.m., the Majority wrote to express their surprise

at receiving a Dissent from Mr. White three months after the January 15, 2015 arbitration award

was issued:

> i have just finished reading what purports to be mr. white's dissent,
> not only to the just issued april 2015 final decision and award
> regarding renewal, confidentiality, and fees/costs, but also to the
> january 2015 final decision regarding allocation, and a host of
> other panel decisions throughout this long arbitration.
>
> comparing the clearly written (although inaccurate) dissent with
> the manner in which mr. white has communicated within the panel
> over the past three years, i can only surmise that he was not the
> (sole) author.  if he was the author, i regret that mr. white decided
> to articulate his dissent in such a delayed fashion.
>
> *     *     *
>
> this unfortunate and entirely unexpected development of an
> inaccurate and ill-timed dissent (a dissent that calls into serious
> question whether outside agencies were involved) raises the
> question of whether this panel can and should function as a panel
> going forward, and i invite comment from counsel.

*See* Knoerzer Dec., Ex. C.

By further statement dated April 25, 2015, the Majority of the arbitration Panel amplified

their concerns regarding the Dissent transmitted by Mr. White in light of the fact that he had

refused to confirm that he was the author of the Dissent or even to communicate about the

Dissent at all:

> TO:    Counsel for NICO and IRB
>
> I write on behalf of the two members of the arbitration panel (the
> "majority") that issued the January 15, 2015 Final Decision (Re:
> Allocation) and the April 15, 2015 Final Decision and Award (Re:

Renewal/Confidentiality and Fees/Costs) (collectively the "Final Decisions") in an arbitration between NICO and IRB.

The majority understands that one or more courts may have received a copy of a Dissent sent by the third arbitrator (James White) on April 16, 2015 to counsel for the parties. Mr. White sent this Dissent without any warning to the majority of the panel, and only after the Final Decisions had been fully deliberated and issued by the entire panel. As a consequence, the majority had no opportunity to respond to the Dissent.

Had the Dissent been limited to the merits of the April 15th Final Decision and Award, based on the record available to the parties, it would be a violation of the rules of this arbitration and standard arbitration practice, but the majority probably would not have found it necessary to respond to it in this fashion.

However, the Dissent applies to both Final Decisions and uses incomplete and distorted confidential panel communications as central support for its unfounded opinions of favoritism by the umpire and the majority toward one party. These disclosures represent serious breaches of panel confidentiality and could mislead any court that does not have the complete record to review.

Consequently, the majority believes that we have been forced by Mr. White to take steps designed to allow documented facts concerning the Dissent to be made available to any court that might give the Dissent consideration, in order to allow the court a basis to decide whether it should obtain a more complete record of confidential panel communications.

Since counsel do not (and should not) have the record of the confidential panel communications, the court would not have much if anything in the record available to place Mr. White's inaccurate and misleading rendition of panel communications in their complete and proper context.

*     *     *

As a courtesy, we will note for counsel just a few facts concerning Mr. White's Dissent.

1)   Mr. White did not request that the January 15th Final Decision note that he was registering a dissent, let alone writing one (three months later); all that was stated was that the Final

-6-

Decision was for the majority, which is understandable because Mr. White noted that he understood the basis for the majority's January 15th Final Decision, and that he found it well-reasoned.

2)    Regarding the April 15th Final Decision and Award, although Mr. White advised that a dissent should be noted on the majority's Final Decision and Award (and it was), he did not even hint that a written dissent of any kind would be provided before or after the April 15th Final Decision and Award was issued, let alone that such dissent would also attack the January 15th Final Decision, as well as the entire handling of the case.

3) Contrary to the experiences of the majority in an aggregate of well over 600 arbitrations, Mr. White did not send the Dissent to the majority for review and comment.  In other words, Mr. White sent the Dissent to all parties without first allowing the majority an opportunity to consider its contents, point out and address errors, and adjust the majority's April 15th Decision and Award appropriately; the panel was also foreclosed from discussing with Mr. White his attacks on the Final Decision and the handling of the case from the start.

4) Also contrary to the experiences of the majority, Mr. White seriously breached the confidentiality of panel deliberations by disclosing private panel communications in the Dissent.  Had the majority had the opportunity to review the Dissent prior to its release, it would have had an opportunity to deal with this breach and had Mr. White not been convinced to delete the snippets of confidential panel communication he misused, the majority would have been able to expose the full record of panel communications in the Final Decision and Award so that any reviewer would have the complete record to evaluate.

5) Without providing any prior notice or explanation for doing so, Mr. White released the Dissent a full day after the April 15th Final Decision and Award (and three months after the January 15th Final Decision), even though he had ample opportunity to send the Dissent to the majority for the detailed analysis and considerations that every opinion of each panel member has received over the past three plus years.

The Dissent (a) was not part of either the January 15, 2015 Decision or the April 15, 2015 Decision and Award; (b) was not subject to review or comment by the other members of the panel; (c) breached the confidentiality of panel deliberations; and (d) was issued after the Final Decisions, using materially incomplete

confidential panel communications in an obvious and improper effort to support the efforts of IRB to reverse these decisions.  No such dissent deserves to be credited or considered by anyone for any purpose.

The majority is confident that a review of the complete record would reveal that the snippets of confidential panel communications that Mr. White chose to expose in the Dissent are misleading and inaccurate and that the allegations of partiality are baseless.  The entire record before the parties reveal that many significant decisions in this three plus year arbitration went "against" NICO and "for" IRB.

However, there is another serious concern (earlier expressed by me) that the Dissent may not have been developed and authored by Mr. White.   Although NICO's counsel advised in apparent response to this concern that it believed the Dissent was just a parroting of IRB's positions, the majority have read Mr. White's communications in this and other arbitrations over many years – and after reading the Dissent, both of us independently and without any contact with each other reached the same opinion:  that the dissent was nothing like anything Mr. White has written before in terms of style, reasoning, expression, syntax, or any other element of writing.

Given this, but recognizing that we are not experts, I asked Mr. White on Friday, April 17th, whether he and he alone developed and authored the Dissent.  My concern was heightened when Mr. White refused to answer that simple question and advised on Sunday, April 19th, that he would not provide any further comment on the subject.  Had Mr. White not developed and authored the Dissent, it can only mean that he (and perhaps others) seriously breached the confidentiality of the arbitration, as well as the confidentiality of panel communications and the procedural rules governing this arbitration generally, by utilizing the assistance of an undisclosed and unauthorized third party.

With the possibility that this matter, including this particular concern, will be dealt with in litigation, I advised all members of the panel on Friday, April 17th, to retain all writings in this arbitration (which should be done in any case) and to turn off any auto-delete features for emails and other e-documents, because these documents and related meta-data may be needed.  Mr. Rosen responded appropriately, and I disclosed a glitch in the transfer of a massive amount of files a few years ago that appears to have eliminated some emails, but I believe that others will have copies.

Mr. White did not comment or otherwise respond to this request either.

It was this concern about Mr. White's Dissent, and this concern alone, that led me to ask counsel for their comments about the continuation of the panel's now quite limited jurisdiction. I thought that the issues involving Mr. White's Dissent went directly to the integrity of the arbitration process, and that both counsel probably would think they would be better handled by the courts, especially in light of that which remains for the panel might be called upon to decide. Had both parties advised or requested that our jurisdiction be terminated, I believe that the panel would have agreed to do so. However, I certainly did not suggest in my initial communication on this subject that our jurisdiction should be terminated, so there was nothing for IRB's counsel to "agree" to.

For the avoidance of doubt, the panel confirms that its retained jurisdiction remains unchanged, and that it expects compliance by the parties with the rulings set forth in the Final Decision and Award so that we may complete our charge.

Each member of the majority is willing to make available to the court(s) any and all of the detailed confidential communications among the three panelists, to respond under oath to any and all questions concerning this case, and to assist the court(s) in any other manner. Hence our continuing request that the parties provide the panel with contact information for any and all courts in which the Dissent has been submitted. Also, the majority requests that we be provided with the filings in any litigation where allegations are made regarding our service on this arbitration panel.

*See* Knoerzer Dec., Ex. D.

Mr. White's reticence about his authorship of the Dissent caused NICO to write DLA Piper, by letter dated May 1, 2015, asking them to confirm that they were not involved in any way in preparing the Dissent. *See* Knoerzer Dec., Ex. E. NICO further put DLA Piper on notice that DLA Piper was to preserve all documents and phone records with Mr. White, on the ground that Mr. White may be called to testify before a federal judge about the provenance of the Dissent:

We call your attention to the Majority's April 25, 2015 declaration which not only calls into question the provenance of the "Dissent" transmitted by IRB's party-appointed arbitrator, Mr. White, but reports that Mr. White has declined to confirm that the Dissent was his work product.

Although you have not yet done so, we expect that IRB will refer to or rely upon the Dissent in support of its motion(s) to vacate the Majority's awards.[4] Absent prompt confirmation of those Awards, the provenance of Mr. White's Dissent will plainly be a discoverable issue, subject to forensic computer inspection and telephone record searches, among other discovery. No doubt, Mr. White would be called upon to testify before a federal judge to explain the view in the dissent and to confirm that he was the sole author of the Dissent.

In this light, we ask that you confirm forthwith that no DLA Piper attorney, nor anyone acting in concert with a DLA Piper attorney, played any role in the development or drafting of the Dissent, or otherwise had any ex parte communications with Mr. White concerning the deliberations of the arbitration Panel or the preparation of the Dissent. In any event, we request that DLA Piper retain all landline telephone, mobile telephone, and computer records of all attorneys and paralegals that have been involved in this matter commencing from January 1, 2015 until the date of the Dissent, April 16, 2015.

*Id.* Mr. White and the rest of the arbitration Panel were copied on this letter. *See id.*

Ten days passed without a word from Mr. White or DLA Piper. Then, by letter of May 11, 2015, IRB's counsel confessed that the DLA Piper firm (no attorneys' names were specifically identified) did, in fact, breach the prohibition against ex parte communications with arbitrators and, after a "series" of communications with Mr. White, provided him with a "template draft" of the Dissent. *See* Knoerzer Dec., Ex. F.

IRB also copied the arbitrators on their letter to NICO's counsel. By email dated May 12, 2015, the Umpire demanded on NICO:

---

[4] By this time, DLA Piper had submitted the Dissent to this Court, but had not yet had an opportunity to refer to the Dissent in any briefing as no briefing was then due to be filed by IRB.

> is nico bringing or planning to bring this serious violation to the
> attention of all courts involved in this arbitration in the US and
> Brazil, as well as the states that license the involved lawyers, and
> the courts that have admitted them to practice?

*See* Knoerzer Dec., Ex. G.

On May 13, 2015, NICO's counsel, having carefully reviewed New York's Rules of

Professional Conduct in light of the known facts, filed a Disciplinary Complaint against DLA

Piper with the Departmental Disciplinary Committee, Supreme Court, Appellate Division First

Judicial Department.

On May 14, 2015 at 8:45 p.m., the Majority of the Panel issued a ruling which, *inter*

*alia*, withdrew any confidentiality order related to the arbitration:

> Given this, and in response to NICO's request based on the use by
> IRB of it in court proceedings, **the panel's Confidentiality Order**
> **is further modified to authorize the parties, counsel, and the**
> **panel members to use the Arbitration Information in any**
> **court, arbitral, or any other proceeding involving any of**
> **them.**

*See* Knoerzer Dec., Ex. H. (emphasis added).

On May 15, 2015, the Panel issued the May 15 Final Award, which held as follows:

> 1)      IRB is ordered to pay NICO the agreed amount of NICO's
> Fees and Costs of $2,524,486.40, with 9% interest accruing
> thereon from June 10, 2015 until paid.
>
> 2)      Within the next 7 days, IRB is ordered to turn over to
> NICO all written communications with Mr. White from January 1,
> 2015 thru 2pm eastern on May 15, 2015, and to detail all
> telephonic or in person communications with him by date,
> attendees, and subject matter during this period.
>
> 3)      The panel will entertain a request to order IRB to turn over
> to NICO all such communications prior to January 1, 2015.
>
> 4)      The panel will retain jurisdiction until further notice.

5)      Due to the contacts between IRB counsel and its arbitrator, the prohibition against *ex parte* communications is no longer applicable, as of 2pm eastern, May 15, 2015, for party appointed arbitrators Messrs. Rosen and White.

*See* Knoerzer Dec., Ex. I.

## ARGUMENT

### POINT I

### CONFIRMATION OF THE MAY 15 FINAL AWARD IS GOVERNED BY THE FEDERAL ARBITRATION ACT AND CONVENTION ON THE RECOGNITION AND ENFORCEMENT OF FOREIGN ARBITRAL AWARDS

Because the May 15 Final Award was entered in the United States and involves a foreign corporation (IRB), both the Federal Arbitration Act ("FAA") and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention" or "Convention") apply.  *See Scandinavian Reins. Co. Ltd. v. Saint Paul Fire and Marine Ins. Co.,* 668 F.3d 60, 71 (2d Cir. 2012); *see also Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.,* 126 F.3d 15, 21-22 (2d Cir. 1997) (explaining that awards are not considered domestic and, thus, are subject to the Convention if they involve parties domiciled or having their principal place of business outside of enforcing jurisdiction) (citing *Bergesen v. Joseph Muller Corp.,* 710 F.2d 928, 932 (2d Cir. 1983)).  Accordingly, NICO's Petition is made under both 9 U.S.C. § 9 of the FAA and Chapter 2 of the FAA, § 201-208, which implements the Convention on the Recognition and Enforcement of Foreign Arbitral Awards.

This Court has jurisdiction under 9 U.S.C. § 203, which provides that "[t]he district courts of the United States ... shall have original jurisdiction over [an action or proceeding falling under the Convention], regardless of the amount in controversy."  9 U.S.C. § 203; *see*

*Scandinavian Reins. Co.,* 668 F.3d at 71 (applying Convention in action to confirm reinsurance arbitration award because one party was foreign corporation).

Venue is proper under 9 U.S.C. §§ 9 and 204 because this Petition seeks confirmation of an arbitral award made within this District.  This Court has personal jurisdiction over the parties because (1) they agreed, in the Arbitration Agreements, to have the Arbitration take place in New York, New York; and (2) the Arbitration was, in fact, conducted in New York, New York. *See Victory Transp. Inc. v. Comisaria Gen. de Abastecimientos y Transportes*, 336 F.2d 354, 363 (2d Cir. 1964).

## POINT II

### THE MAY 15 FINAL AWARD IS ENTITLED TO GREAT DEFERENCE AND SHOULD BE CONFIRMED BECAUSE THERE ARE NO GROUNDS FOR VACATUR UNDER THE FAA OR THE CONVENTION

Consistent with the strong public policy in favor of arbitration, the review of arbitral awards is very limited under both the FAA and the Convention.  *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 103 (2d Cir. 2013) ("The role of a district court in reviewing an arbitration award is narrowly limited and arbitration panel determinations are generally accorded great deference under the Federal Arbitration Act.") (internal citations and quotations omitted); *Agility Pub. Warehousing Co. K.S.C. v. Supreme Foodservice GmbH*, 495 Fed. Appx. 149, 151 (2d Cir. 2012) ("Given the strong public policy in favor of international arbitration, review of arbitral awards under the New York Convention is very limited in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.") (internal citations and quotations omitted).

Section 207 of the Convention provides that:

> Within three years after an arbitral award falling under the
> Convention is made, any party to the arbitration may apply to any
> court having jurisdiction under this chapter for an order confirming
> the award as against any other party to the arbitration.  The court
> *shall* confirm the award unless it finds one of the grounds for
> refusal or deferral of recognition or enforcement of the award
> specified in the said Convention.

(9 U.S.C. § 207) (emphasis added).

As stated in Section 207, confirmation of an arbitration award under the Convention is mandatory unless one of the specified grounds for the refusal or deferral of enforcement applies. Here, none of the grounds for refusal under the Convention remotely apply, as such grounds are limited to: (1) incapacity of a party; (2) lack of notice; (3) resolution of a non-arbitrable dispute; (4) improper composition of the arbitration panel; (5) an award that is not binding; (6) a subject matter of the arbitration that is not capable of settlement by arbitration under the law of the country where enforcement of the award is sought; or (7) a violation of the public policy of the country recognizing the award.  *See* Article V of the Convention; *Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 19; *see also WWOR-TV, Inc. v. Local 209, NABET CWA, AFL CIO*, 166 F.3d 1203 (2d Cir. 1998) ("The showing required to avoid summary confirmation of an arbitration award is high, and a party moving to vacate the award has the burden of proof.  *Unless the party opposing confirmation can show a statutory basis for vacating, modifying, or correcting the award, the award must be confirmed.*") (emphasis added); *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 176 (2d Cir. 1998) (same); *Dalbec v. Alusuisse Flexible Packaging, Inc.*, No. 94 CV 288 (NG), 1997 WL 57242, at *1 (E.D.N.Y. Feb. 10, 1997) ("The Federal Arbitration Act *mandates that a motion to confirm must be granted* unless the award is vacated, modified, or corrected.") (internal citations omitted) (emphasis added).

-14-

There is no basis to vacate the majority's May 15 Final Award (or January 15, or April 15 Awards) under the FAA because these Awards were in no way the product of: (1) corruption, fraud or undue means; (2) evident partiality or corruption by the arbitrators; (3) arbitrator misconduct; (4) the arbitrators exceeding their powers; or (5) evident material miscalculation or mistake. *See* 9 U.S.C. §10 and 9 U.S.C § 11.

NICO expects IRB to raise primarily two hopelessly ill-considered arguments in support of its goal of vacating the awards.  Those arguments have already been made in papers filed under seal before this Court.  NICO's opposition to those arguments is also filed under seal.  To the extent that IRB does in fact challenge the May 15 Final Award on those same grounds it has alleged for the January 15 and April 15 Final Awards, or on any other grounds, NICO will address those arguments in its reply.

## CONCLUSION

For the reasons set forth above, NICO respectfully requests that the Court enter judgment confirming the May 15 Final Award (as well as the January 15 and April 15 Awards) and grant such other relief as the Court may deem just and proper.

Dated:    May 22, 2015
          New York, New York

                                   Respectfully submitted,
                                   Clyde & Co US LLP

                         By:

                                   _____
                                   Michael A. Knoerzer
                                   michael.knoerzer@clydeco.us
                                   Stephen M. Kennedy
                                   stephen.kennedy@clydeco.us
                                   Gregory S. Hoffnagle
                                   gregory.hoffnagle@clydeco.us
                                   The Chrysler Building
                                   405 Lexington Avenue, 16th Floor
                                   New York, New York 10174
                                   Phone:  (212) 710-3900
                                   Fax:  (212) 710-3950

                                   *Attorneys for Petitioner National Indemnity
                                   Company*